IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD G FUCCI,

    Petitioner,

        v

AP KANE, Acting Warden,

    Respondent.

No C 06-1941 VRW

ORDER

        Petitioner Ronald Fucci, a California state prisoner, seeks a writ of habeas corpus pursuant to 28 USC § 2254(a), challenging the denial of parole by the Board of Prison Terms (Board) on December 18, 2003.  Doc #1.  In its July 27, 2006 Order to Show Cause, this court found that petitioner raised two cognizable due process claims: (1) the Board's denial of parole was not supported by the evidence; and (2) the Board's denial of parole violated his plea agreement.  Doc #2 at 3.  Respondent Anthony Kane moved to dismiss the petition on statute of limitations grounds and this court denied the motion.  Doc #7; Doc #12.  Respondent thereafter filed an answer to the petition and petitioner filed a traverse.  Doc #13; Doc #14.  After reviewing the papers and the

relevant portions of the record, the court concludes that petitioner is not entitled to habeas corpus relief based on the claims presented and therefore the petition is DENIED.

I

On August 12, 1988, petitioner pled guilty to first degree murder and was sentenced to twenty-five years to life. Doc #13, Ex 1. He has been serving his sentence since September 28, 1988 and his minimum eligible parole date was on November 15, 2004. Doc #13, Ex 4 at 1. Petitioner disputes some of the facts underlying his conviction, but acknowledges his involvement in the crime and accepts responsibility for his actions. Doc #13, Ex 4 at 64-66.

On December 3, 1987, petitioner and two co-defendants, Prickett and Kangas, were admitted into the victim's home under the guise of selling him drugs, but with the intention to steal from him to satisfy an outstanding debt. Doc #13, Ex 5 at 1, Ex 4 at 20. Petitioner had a special relationship of confidence and trust with the victim, making the victim especially vulnerable. Doc #13, Ex 5 at 2. An argument ensued between petitioner and the victim and petitioner physically forced him to the ground. Id. Petitioner bound the victim's hands and feet with duct tape, while Kangus and Pricket started rummaging through his home looking for property to steal. Doc #13, Ex 5 at 1. Petitioner maintains that when the victim began yelling and screaming, Kangas kicked him in the head and wrapped duct tape around his mouth and nose to quiet him down. Doc #13, Ex 5 at 2. As Kangus and Prickett burglarized the victim's house, petitioner glanced at the victim and noticed

that he was motionless and unresponsive. Id. Petitioner contends that soon thereafter he observed that the victim was not breathing and attempted to cut holes in the duct tape around his nose but the victim had already died. Id at 1-2. Kangus and Picket left, while petitioner stole some of the victim's property to sell in order to have money to leave town. Id at 2. Petitioner fled to Idaho and was arrested when he returned to California. Id.

When Kangus was arrested, he stated that petitioner killed the victim by hitting him in the head with a frying pan. Id at 1. A doctor concluded that the victim had died of suffocation because his mouth and nostrils were completely sealed by at least twelve wraps of duct tape. Id. He also observed evidence of trauma to the victim's eyes, face, head and back. Id.

Petitioner appeared before the Board for his initial parole consideration hearing on December 18, 2003. Doc #13, Ex 4 at 1. The Board found him unsuitable for parole and deferred reconsideration for three years. Doc #13, Ex 4 at 71, 73. Specifically, the Board found that: (1) petitioner's commitment offense was carried out in an especially cruel, callous and dispassionate manner; (2) petitioner had failed previous grants of probation; (3) petitioner had an unstable social history and prior criminality, which included drugs and alcohol abuse beginning at age thirteen, dropping out of high school and having numerous contacts with the police; (4) petitioner received three 115s (disciplinaries); and (5) a 2003 psychological report was not wholly supportive of his release, stating that unless various support and monitoring programs were in place for petitioner and he faithfully followed them, he would remain a danger to society. Doc

3

#13, Ex 4 at 71-73. The Board further found that petitioner needed to "participate in self-help in order to face, discuss, understand and cope with stress in a nondestructive manner," and until progress was made, petitioner continued to be unpredictable and a threat to others. Doc #73, Ex 4 at 73. Although the Board commended petitioner for positive programming, including obtaining his GED, learning sewing machine repair and bookbindery and attending AA meetings, it found that the "positive aspects of his behavior [did] not outweigh the factors of unsuitability." Id.

Petitioner properly exhausted his administrative remedies. Doc #13, Exs, 10, 11. On September 20, 2004, petitioner filed a petition for writ of habeas corpus in the Fresno County superior court. Doc #13, Ex 12. On September 30, 2004, the superior court denied petitioner relief, stating that "the existing evidence does not justify the requested relief at this time." Doc #13, Ex 13. On January 5, 2005, petitioner filed for habeas relief in the Fifth District Court of Appeal, which summarily denied him relief on January 13, 2005, then on June 22 petitioner exhausted his state court remedies by filing for habeas relief in the California Supreme Court, which also denied him relief on February 22, 2006. Doc #13, Exs 14, 15, 16, 17.

II

The court may grant federal habeas relief to a person in custody pursuant to the judgment of a state court only if it determines that he is in custody in violation of the Constitution, laws or treaties of the United States. 28 USC § 2254(a); <u>Rose v Hodges</u>, 423 US 19, 21 (1975). The petition cannot be granted

**4**

1 unless the state court decision "was contrary to, or involved in an
2 unreasonable application of, clearly established Federal law, as
3 determined by the Supreme Court of the United States," or "based on
4 an unreasonable determination of the facts in light of the evidence
5 presented in the State court proceeding."  28 USC § 2254(d).
6     Section 2254 "is the exclusive vehicle for habeas
7 petition by a state prisoner * * * even when the petitioner is not
8 challenging his underlying state court conviction."  Sass v
9 California Bd of Prison Terms, 461 F3d 1123, 1126 (9th Cir 2006).
10 When a state court does not explain its reasoning, the court must
11 conduct an independent review of the record to determine whether
12 the state court's decision was objectively unreasonable.  See id at
13 1127.

### III

#### A

17     California Penal Code section 3041 vests California
18 prisoners whose sentences provide for possibility of parole with a
19 constitutionally protected liberty interest in the receipt of a
20 parole release date, protected by the procedural safeguards of the
21 Due Process Clause.  Irons, II v Carey, 2007 WL 2027359, *3 (9th
22 Cir).  Because in California there is a liberty interest in
23 obtaining parole, prisoners may not be deprived of this expectancy
24 without due process of law.  See McQuillion v Duncan, 306 F3d 895,
25 903 (9th Cir 2002).
26     The Ninth Circuit has held that the process due in a
27 proceeding to set a parole date is the same as the Supreme Court
28 outlined in Superintendent, Mass Correctional Inst at Walpole v

<u>Hill</u>, 472 US 445 (1985), for prison disciplinary hearings. <u>Jancsek v Oregon Board of Parole</u>, 833 F2d 1389, 1390 (9th Cir 1987). The Court in <u>Hill</u>, 472 US at 456, held that the requirements of due process are satisfied if "some evidence" supports the decision. To determine whether the some evidence standard is met, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the parole board. <u>Sass</u>, 461 F3d at 1128. The some evidence standard is minimal and its purpose is to ensure that "the record is not so devoid of evidence that the findings of [the parole] board were without support or arbitrary. Id at 1129 (quoting <u>Hill</u>, 472 US at 457).

When assessing whether the parole board's decision was supported by some evidence, the court must look to the underlying California law that sets out the factors that parole boards must use in determining a prisoner's suitability for parole. See <u>Irons, II</u>, 2007 WL 2027359 at *5. Under California law, parole may be denied if the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration * * *." Cal Penal Code § 3041(b).

B

Petitioner argues that the Board's decision was not supported by some evidence because its finding that petitioner's commitment offense was carried out in an especially cruel, callous and dispassionate manner did not comport with the evidence in the record and the reliance on his commitment offense violates due

6

process. Doc #14 at 5, 8. Moreover, petitioner contends that the Board's finding that he lacked marketable skills was arbitrary and his denial of parole violated the terms of his plea agreement. Doc #14 at 10; Doc #1 at 8, 13, 18-19. The court addresses each of these contentions in turn.

1

Petitioner first challenges the Board's finding that his commitment offense was carried out in an exceptionally cruel and callous manner. Doc #14 at 5. He argues that there are no facts in the record that indicate the crime involved multiple victims; abuse, defilement or mutilation; exceptionally callous disregard for human suffering; or an inexplicable motive as required by Cal Code Regs, tit 15 § 2402(c)(1)(A)-(E).

Implementing regulations set detailed factors to consider whether an inmate convicted of murder with an indeterminate life sentence is suitable for parole. See Cal Code Regs tit 15, §§ 2402(c)-(d). Among these factors indicating unsuitability for release are, inter alia: (1) the prisoner's commitment offense was committed in an especially heinous, atrocious or cruel manner; (2) the prisoner has a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner has a lengthy history of severe mental problems related to the offense; and (5) the prisoner has engaged in serious misconduct while in prison. See Cal Code Regs, tit 15 § 2402(c).

When a finding of unsuitability is predicated on the prisoner's commitment offense, "the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed * * *." See In re Dannenberg, 34 Cal App 4th 1061, 1071

7

(2005). Such factors include, that "the offense was carried out in a dispassionate and calculated manner," that "the victim was abused * * * during or after the offense" and that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." See Cal Code Regs, tit 15 § 2402(c)(1)(B)-(D).

The Board stated that the crime was carried out in an especially cruel and callous manner because of the dispassionate manner the victim was killed, satisfying Cal Code Regs, tit 15 § 2402(c)(1)(B). Doc #13, Ex 4 at 71. This conclusion was drawn from the fact that petitioner and his two crime partners, during a home invasion, physically forced the victim to the ground, bound him and wrapped at least twelve layers of duct tape around his mouth and nose which led to his suffocation. Id. Even after the victim was dead, petitioner continued burglarizing the victim's home, which suggested an indifference towards the victim's death. Id.

In addition to the facts specifically recited in the Board's decision, the record contains other facts that could buttress the Board's decision. A doctor observed evidence of trauma to the victim's eyes, face, head and back, which indicates that "the victim was abused * * * during or after the offense." Doc #13, Ex 5 at 1; Cal Code Regs, tit 15 § 2402(c)(1)(C). Petitioner knew the victim and had a special relationship of trust with him. Doc #13, Ex 5 at 2. During the commission of the crime petitioner had clear opportunities to cease the fatal attack but instead continued. Id. Moreover, petitioner and his confederates went to burglarize the victim's home to satisfy a mere thirty

8

dollar debt, demonstrating a motive for the crime that is "very trivial in relation to the offense." Doc #13, Ex 3 at 2; Cal Code Regs, tit 15 § 2402(c)(1)(E).

Accordingly, "some evidence" supported the Board's use of the "dispassionate and calculated" factor. Additionally, the court finds evidence in the record that the victim was "abused" and the motive was "trivial" in finding the murder was carried out in "an especially heinous, atrocious or cruel manner." Cal Code Regs, tit 15 § 2402(c)(1).

The court notes that only when the Board, unlike this case, relies solely on the commitment offense in denying parole do the circumstances of the offense have to be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. See Dannenberg, 34 Cal App 4th at 1094. Even so, the circumstances of the crime in this case go beyond the minimum necessary to sustain the conviction. Id. Special circumstances, such as felony murder, justifying punishment by death or life without the possibility of parole are acts beyond the minimum necessary to sustain the conviction. See In re Van Houten, 116 Cal Ap 4th 339, 353 (2004). Petitioner pled guilty to first degree murder punished currently by a sentence of twenty-five years to life with the possibility of parole; this offense is characterized by a lack of special circumstances justifying the death sentence or life without the possibility of parole. Cal Pen Code §§ 190(a), 190.2(a); Van Houten, 116 Cal App 4th at 353. Petitioner's offense, however, involved the special circumstance of felony murder because the victim was killed during the course of a home invasion robbery. Doc #13, Ex 4 at 71; Cal Pen Code §

190.2(a)(17(A), (G). Therefore, notwithstanding other facts in the record supporting a denial of parole, petitioner's commitment offense alone could have sustained the Board's decision.

2

Next, petitioner argues that the Board's reliance on an immutable factor to deny him parole, namely his commitment offense, violated his due process. Doc #14 at 8. This argument is without merit.

The Ninth Circuit has held that a parole board's sole reliance on the gravity of the offense and conduct prior to imprisonment in denying parole can be initially justified. Irons, II, 2007 WL 2027359 at *5. Over time, however, continued reliance on the nature of the offense when the prisoner demonstrates exemplary behavior and evidence of rehabilitation, could result in a due process violation. Id.

In the instant case, petitioner was denied parole after his initial parole hearing. Moreover, the Board based its decision on other factors besides his commitment offense. Doc #13, Ex 4 at 1, 71-73. The Board considered petitioner's history of drug and alcohol abuse and his escalating pattern of criminal conduct prior to his imprisonment, including probation violations, public intoxication, driving under the influence and battery. Doc #13, Ex 3 at 5-8, Ex 4 at 71-72. The Board also took into account petitioner's three conduct violations (out of bounds, battery and smoking in a cell) while in prison. Additionally, a psychiatric report stated that petitioner needed a longer period of observation and evaluation and that if released without a support system and

//

10

continued monitoring, he remained a danger to the community.  See Doc #13, Ex 4 at 72, 74.

Accordingly, because this was petitioner's initial parole hearing and the Board used other factors besides his commitment offense to deny him parole, petitioner cannot maintain that his right to due process was violated by a "continued reliance" on his commitment offense.  Therefore, the Board in basing its decision on pre-conviction recidivism, social instability with substance abuse, prison misconduct and the nature of the offense easily satisfied the "some evidence" standard.  See <u>Sass</u>, 461 F3d 1129.

3

Petitioner also argues that the Board arbitrarily ruled that petitioner needed to "upgrade vocationally."  Doc #14 at 10. One factor that lends support to a prisoner being suitable for parole is a showing by the prisoner that he or she "has made realistic plans for release or has developed marketable skills that can be put to use upon release."  See Cal Code Regs, tit 15 § 2402(d)(8).  Petitioner points to the fact that he is skilled in sewing machine repair and bookbinding and that he is a certified fitness trainer and has experience as a heavy equipment operator. Doc #13, Ex 4 at 37-38, 40, 49.  Petitioner contends that based on these skills he secured a firm job offer, thus proving he possessed marketable skills within the meaning of § 2402(d)(8).  Doc #14 at 10.

As the court reads the decision, the Board's view of petitioner's job skills was generally positive and it intended to encourage petitioner to continue "going down the right path."  See Doc #13, Ex 4 at 75.  There is no indication in its decision that

11

the Board based its denial of parole on a finding that petitioner lacked marketable skills. In any event, the court's role is limited to determining whether the Board's decision was supported by some evidence, which it was. See <u>Biggs v Terhune</u>, 334 F3d 910, 916 (9th Cir 2003)(holding that "the district court was correct in finding that in spite of the fact that several of the Board's findings were unsupported, there was some evidence supporting the Board's decision * * *."). Because the record is not so devoid of evidence that the findings of [the parole] board were without support, the court need not examine further. See <u>Sass</u>, 461 F3d at 1128.

4

Finally, petitioner asserts he is entitled to parole pursuant to his plea agreement. Doc #1 at 8. He contends that "he entered into a plea based on the expectation his crime would be treated as less serious." Id at 13. Petitioner contends that the reciprocal benefit of the plea agreement is the earliest possible release as long as his behavior in prison does not suggest that he is currently a threat to society. Id at 18-19.

Under California law, plea agreements are governed by ordinary rules of contract interpretation. See <u>Buckley v Turnhune</u>, 441 F3d 688, 694-95 (9th Cir 2006). Thus, "California courts are required to construe and interpret plea agreements in accordance with state law." Id at 695.

Petitioner's plea agreement indicates that his crime was treated as "less serious" than if he had been sentenced following a conviction at trial; his offense involved the special circumstance of felony murder, which is punishable by death, but he instead

**12**

received a sentence of twenty-five years to life with the possibility of parole.  More importantly, though, petitioner has produced no evidence showing that his plea agreement included the promise of release from prison once eligible for parole. Accordingly, the court finds that the Board did not violate the terms of petitioner's plea agreement in denying him parole.

IV

For the reasons stated herein, the petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge